Frank T. Kienstra et al., Appellants, v. Madison County Mutual Automobile Insurance Company, Appellee.

term, 1942. Heard in this court at the May Opinion filed November 2, 1942.

TERRY, GUELTIG & POWELL, of Edwardsville, for appellants.

SIMPSON, REED & BURROUGHS, of Edwardsville, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from an order of the circuit court of Madison county, sustaining the motion of Madison County Mutual Automobile Insurance Company, a corporation, appellee (hereinafter called defendant), to dismiss the second amended complaint of Frank T. Kienstra, Joseph C. Kienstra, et al., for the use of Aetna Casualty and Surety Company, appellants (hereinafter called plaintiffs.)

The action was instituted to recover from defendant Automobile Insurance Company, on a policy issued to Service Coal & Ice Company, under which

name the Kienstra brothers were doing business as partners. By the terms of the policy defendant agreed to indemnify them against loss up to $5,000 for damages on account of bodily injury suffered by any person as a result of an accident caused "by reason of the use, ownership, or maintenance" of a certain Ford truck described in the policy.

At the same time Aetna Casualty and Surety Company had in force its policy, by which Kienstra brothers, doing business as "Service Coal Company" was insured by the Aetna Company against "loss and/or expense resulting from claims upon the assured for damages on account of bodily injuries, or death, alleged to have been accidentally suffered by any person or persons not employed by the assured," and listed, as an exception to such contract, that the company was not to be liable "on account of any claim alleging injuries or death caused . . . by the ownership, maintenance, or use of a vehicle of any description."

While both of such policies were in force an employee operating the ice truck on July 5, 1939, was delivering a 50-pound cake of ice from the truck to the house of one of his customers and negligently caused the cake of ice to fall upon a three-year-old boy who was in the customer's yard, through which the ice was being carried. A claim for damages was made by the child, through his mother as next friend, for his injuries and for the hospital and medical expenses. Defendant denied liability, but the Aetna Company compromised and settled the personal injury claim for $1,000, and the loss of service claim for $500, and arranged and confessed judgment for $1,000 in the circuit court on the claim of the minor in a friendly suit handled by its attorneys. The Aetna contract provided for subrogation in case of loss or expense "under this policy" to the assured's right

of recovery against others for such loss or expense. The Aetna Company brought the action in the name of the assured Kienstra brothers to compel the defendant to pay to the Aetna Company the loss which it has paid under its insurance policy. An original and a first amended complaint were filed by plaintiffs, and the second amended complaint was finally filed, which the defendant moved to dismiss on a number of grounds. The motion to dismiss, as indicated herein, had been sustained and plaintiffs elected to stand by their second amended complaint.

On appeal to this court plaintiffs contend that the words, "by reason of the use, ownership or maintenance of the automobile" are broad enough to include the act of the driver in carrying away and delivering the cake of ice in the yard of the customer where the accident occurred, as herein stated. It is contended by plaintiffs that the clause referred to is broad enough to include "unloading" operations and that such provisions should be liberally construed in favor of plaintiffs in this cause to extend the interpretation to include the accident in question. In this connection it should be noted that the exception in the Aetna policy contains similar language.

This is apparently a case of first impression in this State upon the precise facts involved herein. It is illogical for us to conclude that, when the ice in this case had been unloaded from a vehicle and was en route to its destination by other means, the accident, under the particular facts involved herein (and as between the parties) could constitute an accident caused by reason of "the use, operation or maintenance of the automobile." While the truck had been used to deliver the ice to the household of the customer, the ice involved in the accident had been removed therefrom, and was being carried from the street to the customer's icebox. The ice man had walked away from the street, through the customer's backyard and was

near the back porch when he dropped the ice. It is difficult indeed to see any causal relationship between the accident and the "use and operation" of the truck, under the facts in the instant case.

In our review of the many cases which have been cited by parties in this action, we have been directed to a number of policies which specifically insure the risk of "loading and unloading" of trucks. Nothing which we have to say in this case is to be understood as a construction of such policy provisions. It is contended by appellant, on the basis of the cases of *Panhandle Steel Products Co. v. Fidelity Union Casualty Co.* (Tex. Civ. App.), 23 S. W. (2d) 799 (1929); *Owens v. Ocean Accident & Guarantee Corp.*, 194 Ark. 817, 109 S. W. (2d) 928 (1937), that the unloading of the truck was a necessary incident to its use, and that, therefore, the language of the policy is such as to include such operations in the "use, ownership, or maintenance." Neither of such cases involved a subrogation suit, and in each, the assured was the real party in interest. The courts there felt impelled to adopt the rule of liberal construction and to construe the language most strongly against the insurance company. In the instant case the real party in interest is the Aetna Company and it is asking, in substance, that the exception in its policy be construed strictly and that the provision of the defendant's policy be construed liberally to the end that liability may be imposed upon defendant.

We have examined many cases in coming to our conclusion in the instant case. Our attention has been directed to the cases of *Zurich General Accident & Liability Ins. Co. v. American Mut. Liability Ins. Co. of Boston*, 118 N. J. L. 317, 192 Atl. 387; *Jackson Floor Covering v. Maryland Casualty Co. of Baltimore*, 117 N. J. L. 401, 189 Atl. 84; *Franklin Co-op. Creamery Ass'n v. Employers' Liability Assur. Corp., Ltd. of London*, 200 Minn. 230, 273 N. W. 809; *J. T.*

*Hinton & Sons v. Employers' Liability Assur. Corp.*, 166 Tenn. 324, 62 S. W. (2d) 47; *United States Fidelity & Guaranty Co. v. Breslen,* 243 Ky. 734, 49 S. W. (2d) 1011; *Caron v. American Motorists' Ins. Co. of Chicago,* 277 Mass. 156, 178 N. E. 286, and a number of others.

The *Zurich* case, *supra,* is of particular interest in that in that case it was the practice of the ice truck driver to place the ice in the refrigerator for the storekeeper. The cake was too large for the refrigerator door and in the process of fitting the cake to get it into the icebox the proprietor's wrist was negligently stabbed. The *Zurich Company* (like the Aetna Company in the instant case) carried a public liability policy which excepted accidents arising in connection with the "maintenance, use or operation" of motor vehicles. The *American Mutual Co.* carried an automobile policy which insured against liability by reason of the "use, ownership, maintenance or operation" of the truck. The court in that case held that the accident was not covered by the *American Mutual* policy and that the automobile policy contemplated an accident immediately identified with the "ownership, maintenance, use, or operation" of the vehicle, and that the words "use, ownership and maintenance" were plain and unambiguous, and delimit with understandable certainty the liability imposed upon the insured. It was pointed out that they related to the vehicle itself, and excluded accidents that were only remotely connected with the "ownership, maintenance or use." As stated by that court (at p. 388), "A construction that would include within the coverage of a clause so phrased, the thing being done when the accident happened, would impart to it an artificial meaning at variance with the apparent intention of the parties." It was pointed out in that case that the assured had paid premiums on two policies and that both must be interpreted as an integrated agreement

and that the courts must attach to the words used the same meaning which an intelligent person acquainted with all of the uses and operations of the ice business would have attached to the same when he bought the two policies. Such conclusions are, likewise, applicable in the instant case. So interpreted, it seems reasonably clear that the Kienstra brothers had insured with the Aetna Casualty & Surety Company as to all risks incurred after the ice man had taken the ice off of the truck and started it on its journey to the customer's icebox.

In *Jackson Floor Covering v. Maryland Casualty Co., supra,* the truck involved had brought some linoleum to the unloading platform and had come to rest. From this point plaintiff's employees in that case were transporting the linoleum rolls on a handcart to the purchaser's platform when the linoleum rolled off and injured a third party. In that case the automobile carrier was not required to stand the loss and the general liability carrier was held liable for the reason, as stated by the court, that (p. 85) "the unloading of the plaintiff's truck had been completed and the transportation from there on was by a different means; hence there could be no concurrent coverage since the carrier insuring the automobile truck was under no obligation."

In *Franklin Co-op. Creamery Ass'n. v. Employers' Liability Assur. Corp., supra,* the Minnesota Supreme Court, in construing not only the "use, operation and maintenance" clause, but also a "loading and unloading" clause, stated (p. 810), "After he left his wagon, carrying the containers, the process of retail distribution began. If he had served customers on the first floor before he attempted to take the elevator, it could hardly be contended that he was still engaged in unloading the vehicle, nor could it be so contended if some accident had happened while he was passing from customer to customer . . . necessarily, the

unloading of a great variety of merchandise involves various situations resulting in various holdings as to when the process of unloading terminates. This one stands outside the terms of the unloading clause of the policy and it stands even farther without the 'operation, maintenance and use' clause.'' The court there determined that injuries caused by negligent operation of a freight elevator in a three-story building by a milkman delivering milk was not within either the unloading or the operation, maintenance and use clause.

In *Caron v. American Motorists' Ins. Co., supra,* an ice truck was parked near a crosswalk and while so parked pieces of ice had fallen to the ground. Plaintiff, while crossing the street, stepped upon the pieces of ice and fell and injured herself. The court, in denying liability in that case, stated (p. 287), ''The motor vehicle was not in motion. The plaintiff's injury did not result from its being stationary on the public way. It resulted entirely from the conduct of one disposing of the contents of that motor vehicle in a way which is customary in delivering ice. Transportation by motor vehicle of the ice. . . . had ended.''

The views expressed in the cases referred to seem consistent with the language of the policies in the instant case. We believe that in a proper case, views such as expressed in *Caron v. American Motorists' Ins. Co., supra,* may be determined to be too narrow and not consistent with a liberal interpretation of an automobile use, operation and maintenance policy. Under the particular facts involved in this cause, however, we feel that liability properly was that of the Aetna Company which carried the general liability insurance, and not upon the Madison County Company which carried the automobile insurance. Consistently with the interpretation in the cases referred to (and notably, in the case of *Zurich General Accident & Liability Ins. Co. v. American Mut. Liability*

*Ins. Co.*), we believe that the court below properly sustained the motion to dismiss the second amended complaint. The judgment of the circuit court of Madison county is, accordingly, affirmed.

*Judgment affirmed.*