SIRUS ARYAINEJAD, Plaintiff-Appellant, v. ECONOMY FIRE AND CASU-
ALTY COMPANY, a Division of Kemper Corporation, Defendant-Appellee.

Third District No. 3—95—0410

Opinion filed April 3, 1996.

SLATER, J., dissenting.

Andrew J. Kleczek (argued), of Law Offices of Andrew J. Kleczek, of Peoria, for appellant.

John P. Lynch (argued) and Brian P. Shaughnessy, both of Cremer, Kopon, Shaughnessy & Spina, of Chicago, for appellee.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Sirus Aryainejad, filed a claim for uninsured motorist coverage under his automobile insurance policy with the defendant, Economy Fire and Casualty Company (Economy). The trial court found that Aryainejad was not entitled to uninsured motorist benefits because the causal relationship between his injuries and the ownership, maintenance or use of the uninsured motor vehicle was insufficient. We hold that uninsured motorist coverage does apply in this case because Aryainejad's injuries resulted from an activity that presented the type of risk the parties reasonably contemplated would be covered by the policy. Accordingly, we reverse.

James Duffy was driving on Interstate 57 near Kankakee when he ran out of gasoline. Duffy left his vehicle to walk to a gas station. While Aryainejad was driving on I-57, he observed Duffy walking toward him in the middle of a traffic lane on the interstate. Aryainejad lost control of his vehicle in an attempt to avoid hitting Duffy and sustained serious injuries in the ensuing crash. Duffy admitted that he had been drinking prior to the accident.

Upon learning that Duffy was uninsured, Aryainejad filed a claim for uninsured motorist coverage under his automobile insurance policy with Economy. When Economy denied his claim, Aryainejad filed the instant suit in the circuit court.

The uninsured motorist provision of Aryainejad's policy provided that "the owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the uninsured motor vehicle." The parties agreed that the sole issue was whether the accident "arose out of Mr. Duffy's ownership, maintenance, or use of his vehicle," and they each filed motions for summary judgment. The trial court found that the accident was unrelated to Duffy's owner-

ship, maintenance or use of his vehicle primarily because Duffy's vehicle did not come into physical contact with Aryainejad's vehicle. Accordingly, the court granted Economy's motion for summary judgment.

■ When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133, 135 (1993). On appeal from the entry of summary judgment, the standard of review is *de novo. Andrews*, 256 Ill. App. 3d at 769, 629 N.E.2d at 135.

■ Insurance policies are subject to the same rules of construction that apply to other types of contracts. *Morgan v. CUNA Mutual Insurance Society*, 242 Ill. App. 3d 1027, 611 N.E.2d 112 (1993). The main objective in construing an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement. *Milwaukee Guardian Insurance, Inc. v. Taraska*, 236 Ill. App. 3d 973, 602 N.E.2d 70 (1992). Where the terms in an insurance policy are unambiguous, they must be given their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992). Insurance policies must be liberally construed in favor of the insured. *United States Fidelity & Guaranty Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533, 637 N.E.2d 1167 (1994).

■ Many courts throughout the country have construed insurance policies with language almost identical to the policy at issue here, and some general principles have been uniformly applied. The words "arising out of" have been interpreted broadly to mean originating from, incident to, or having a causal connection with the ownership, maintenance or use of the vehicle. See 6B J. Appleman & J. Appleman, Insurance Law & Practice § 4317, at 360-63 (rev. ed. 1979) (and cases cited therein). Thus, for example, an injury may arise out of the ownership, maintenance or use of a vehicle despite the fact that the vehicle was not being operated at the time the injury was sustained. *Westchester Fire Insurance Co. v. Continental Insurance Cos.*, 126 N.J. Super. 29, 312 A.2d 664 (1973); 12 Couch on Insurance 2d § 45.58, at 293-94 (rev. ed. 1981).[1] In addition, to determine whether an injury arose out of an uninsured motorist's

---

[1]The dissent points out that in *Apcon Corp. v. Dana Trucking, Inc.*, 251 Ill. App. 3d 973, 623 N.E.2d 806 (1993), the court held that "use" of a vehicle, for purposes of an insurance policy, is limited to the actual operation of the vehicle. According to the dissent, *Apcon* controls here. The issue in *Apcon*, however, was completely different from the issue in the case at bar. The insurance policy in Apcon provided that anyone "using" the covered vehicle

use of his vehicle, courts must consider what the uninsured motorist was doing when the injury occurred, as well as his purpose and intent. See *State Farm Mutual Automobile Insurance Co. v. Powell*, 227 Va. 492, 499, 318 S.E.2d 393, 397 (1984); see also 6B J. Appleman & J. Appleman, Insurance Law & Practice § 4317, at 367 (rev. ed. 1979).

A majority of the courts that have analyzed this issue have held that there must be a causal relationship between the injury and the ownership, maintenance or use of the vehicle for coverage to apply. *E.g., Stuen v. American Standard Insurance Co.*, 178 Ill. App. 3d 986, 534 N.E.2d 208 (1989). Unfortunately, no uniform causation standard or test for resolving this issue has been adopted. Instead, the causation tests may generally be divided into two categories: the "but for" test, and the more restrictive tests.

■ The states that have adopted a "but for" test find that coverage applies if the injuries would not have occurred "but for" the ownership, maintenance or use of the vehicle. *E.g., Eichelberger v. Warner*, 290 Pa. Super. 269, 434 A.2d 747 (1981). Under this broad test, courts have held that coverage applies if there is any causal nexus between the injuries and the ownership, maintenance or use of the vehicle. *E.g., Government Employees Insurance Co. v. Novak*, 453 So. 2d 1116 (Fla. 1984).

Other courts, however, have rejected the "but for" test because it often leads to coverage in cases where the only connection between the vehicle and a person's injuries is that the vehicle transported the person to the location where the injury occurred. See *Hawkeye-Security Insurance Co. v. Gilbert*, 124 Idaho 953, 866 P.2d 976 (1994). These courts have created more restrictive causation tests that do not provide coverage where the vehicle's relation to the injuries is incidental or fortuitous. See *Gilbert*, 124 Idaho at 956, 866 P.2d at 979 (holding that causal connection must be more than incidental or fortuitous); *Foss v. Cignarella*, 196 N.J. Super. 378, 482 A.2d 954 (1984) (holding that there must be a "substantial nexus" between the injury and the use of the vehicle); *Indiana Lumbermens Mutual Insurance Co. v. Statesman Insurance Co.*, 260 Ind. 32, 291 N.E.2d 897 (1973) (holding that the use of the vehicle must be the "efficient and predominating cause" of the accident).

---

with the owner's permission was insured under the policy. The issue was whether a person who was standing outside the vehicle directing the driver was "using" the vehicle. The issue in the case at bar is not whether Duffy was "using" his vehicle at the time the accident occurred. Rather, the issue is whether the accident "arose out of" Duffy's use of his vehicle. Therefore, *Apcon* has no impact on our analysis.

While a majority of the courts have applied one of the foregoing causation tests, a large minority have taken an alternative approach. These courts afford coverage where the injury is the result of an activity that presented the type of risk that the parties reasonably contemplated would be covered by the policy. See *State Farm Mutual Automobile Insurance Co. v. Powell*, 227 Va. 492, 318 S.E.2d 393 (1984); *Tomlin v. State Farm Mutual Automobile Liability Insurance Co.*, 95 Wis. 2d 215, 290 N.W.2d 285 (1980); *Westchester Fire Insurance Co. v. Continental Insurance Cos.*, 126 N.J. Super. 29, 312 A.2d 664 (1973); *Commercial Union Insurance Co. of New York v. Hall*, 246 F. Supp. 64 (E.D.S.C. 1965). These courts have resolved this issue by determining whether the alleged "use" is reasonably consistent with the inherent nature of the vehicle. *Lawver v. Boling*, 71 Wis. 2d 408, 415-16, 238 N.W.2d 514, 518 (1976). Use that is consistent with a vehicle's inherent nature extends beyond the actual operation of the vehicle to include activities that are reasonable and foreseeable consequences of the use of the vehicle. *Hawkeye-Security Insurance Co. v. Gilbert*, 124 Idaho 953, 960, 866 P.2d 976, 983 (1994). According to one court:

> "The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." *Westchester Fire Insurance Co. v. Continental Insurance Cos.*, 126 N.J. Super. 29, 38, 312 A.2d 664, 669 (1973).

Illinois courts have not yet adopted any of the foregoing tests. While one court expressly applied the "but for" test (*Toler v. Country Mutual Insurance Co.*, 123 Ill. App. 3d 386, 462 N.E.2d 909 (1984)), others have avoided it without adopting an alternative test (*Stuen v. American Standard Insurance Co.*, 178 Ill. App. 3d 986, 534 N.E.2d 208 (1989); *Woodside v. Gerkin Food Co.*, 130 Ill. App. 3d 501, 474 N.E.2d 776 (1985)). Therefore, we must either select the test that we feel is the most appropriate or create a new test.

While we agree that the inquiry into whether an injury arose out of the ownership, maintenance or use of a vehicle should include some elements of causation, the tests that focus solely on causation have proven to be difficult to apply. For example, in Florida, where courts apply the "but for" test, courts faced with almost identical fact patterns have achieved inconsistent results. Compare *Pena v. Allstate Insurance Co.*, 463 So. 2d 1256 (Fla. App. 1985) (holding that injury arose out of the ownership, maintenance or use of vehicle

where insured was shot in his vehicle), with *Allstate Insurance Co. v. Famigletti*, 459 So. 2d 1149 (Fla. App. 1984) (holding that injury did not arise out of the ownership, maintenance or use of vehicle where insureds were shot in their vehicle). Moreover, terms such as "substantial nexus" and "efficient and predominating cause" are not useful because the extent of the causal connection between an injury and the ownership, maintenance or use of a vehicle simply cannot be determined with any degree of precision. For these reasons, we believe that the tests that focus solely on causation do not provide an adequate analytical framework for resolving this frequently litigated issue. The better approach is to eschew such tests and follow the courts that afford coverage where the injuries resulted from an activity that is within the risk reasonably contemplated by the parties. We therefore adopt this approach and apply it to the case at bar.

■ The parties agree that Duffy left his vehicle and proceeded to walk to a gas station. Vehicles frequently break down or run out of gas. When this occurs, drivers must often leave their vehicles to find help, thereby creating a risk to themselves and to other drivers who may lose control of their vehicles while taking evasive action. Thus, Duffy's act of walking on the interstate after his car ran out of gas and the risk he posed to other drivers were reasonable and foreseeable consequences of the use of his vehicle. Accordingly, we hold that Duffy's actions were within the risk for which the parties to the contract reasonably contemplated there would be coverage, and thus, Aryainejad's injuries arose out of Duffy's use of his vehicle.

Economy, however, argues that Duffy's automobile merely transported him to the location where the accident occurred and that walking on the interstate was an independent act which was unrelated to his ownership, maintenance or use of the vehicle. See *United States Fidelity & Guaranty Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533, 637 N.E.2d 1167 (1994) (holding that vehicle must do more than create the atmosphere of hostility that leads to an altercation); *Hawkeye-Security Insurance Co. v. Gilbert*, 124 Idaho 953, 959, 866 P.2d 976, 982 (1994) (holding that injuries from an assault were unrelated to the ownership, maintenance or use of the vehicle because the insured's acts of leaving the car and assaulting a bicyclist were independent acts).

We agree that an automobile must do more than merely transport a person to the site where an accident occurs for coverage to apply and that an assault by the driver of a vehicle is an act which is independent and unrelated to the ownership, maintenance or use of a vehicle. Regardless of whether a vehicle creates a condition that leads to an assault, injuries resulting from an assault are not a normal or

reasonable consequence of the use of a vehicle. In other words, because physical altercations are not reasonably consistent with the inherent nature of the vehicle, they are not risks for which the parties to automobile insurance contracts would reasonably contemplate there would be coverage. On the other hand, walking down the highway after a vehicle breaks down or runs out of gas is a reasonable consequence of the use of a vehicle.

Economy argues that Duffy's decision to walk in the traffic lane instead of on the shoulder was an independent act that broke the chain of causation. However, the fact that Duffy did not walk on the shoulder does not take his activity outside the risk for which the parties contemplated there would be coverage. Regardless of the manner in which he walked, Duffy's actions originated from and were incident to the use of his vehicle. Both his act of walking to a gas station and the risk he posed to other drivers were reasonable and foreseeable consequences of the use of his vehicle despite the fact that he did not walk on the shoulder. *Cf. Benner v. Bell*, 236 Ill. App. 3d 761, 602 N.E.2d 896 (1992) (holding that a negligent act which is foreseeable is not an intervening cause). Accordingly, we reject Economy's contention that Duffy's automobile merely transported him to the location where the accident occurred and that his act of walking on the interstate was unrelated to his ownership, maintenance or use of the vehicle.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is reversed, and summary judgment is entered in favor of Aryainejad.

Reversed.

LYTTON, J., concurs.

JUSTICE SLATER, dissenting:

I do not agree with the majority that this accident arose out of the "ownership, maintenance or use" of an uninsured vehicle. The majority appears to offer a thoughtful and well-reasoned analysis, and I have no particular quarrel with the test the majority adopts. Nevertheless, the logic of the majority opinion breaks down when the majority tries to apply its test to the facts of this case.

Terms in an insurance policy are to be given their plain and ordinary meaning. See *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 632 N.E.2d 1039 (1994). Giving the terms of this policy their plain and ordinary meaning would hamper the majority's analysis, because clearly Duffy's action in wandering

intoxicated down the middle of an interstate traffic lane did not "arise out of the ownership, maintenance or use of the uninsured vehicle." Although not entirely clear, the majority appears to be limiting its analysis to the word "use." The majority then reaches to out-of-state authority for the proposition that an accident may arise out of the use of a vehicle despite the fact that the vehicle was not being used at the time, and ignores Illinois authority that to constitute a "use" under an insurance policy, one must be in operation of the vehicle. See *Apcon Corp. v. Dana Trucking, Inc.*, 251 Ill. App. 3d 973, 623 N.E.2d 1039 (1993).

The majority settles on a test that considers whether the injury is the result of an activity that presented the type of risk the parties reasonably contemplated would be covered by the policy and whether the alleged "use" is reasonably consistent with the inherent nature of the vehicle. It will probably be of interest to defendant to learn that when it included in its policy the clause providing coverage for accidents arising out of the ownership, maintenance, or use of an uninsured vehicle it was providing coverage for accidents caused by intoxicated pedestrians walking in the middle of a highway.

Although the majority states it is applying its newly adopted test, it is really just applying a "but for" test. The majority concedes that an automobile must do more than transport a person to the scene where an accident later occurs. Such a concession should lead the majority to conclude that no coverage can be provided here. In fact, in the case at bar, the car did not even transport Duffy to the scene of the accident. Duffy had walked between three-tenths and three-quarters of a mile from his automobile and was a pedestrian at the time of the accident. In *Kienstra v. Madison County Mutual Automobile Insurance Co.*, 316 Ill. App. 238, 44 N.E.2d 944 (1942), the court, in construing an "ownership, maintenance or use" clause, determined that the clause was not applicable to a situation in which a deliveryman parked his ice truck in front of plaintiff's house, unloaded a cake of ice from the truck, and then accidently dropped the ice on plaintiff's child while carrying it through the yard. In denying coverage, the court focused on the fact that the deliveryman had exited the truck and was en route to his destination by other means. The court concluded that it was "difficult indeed to see any causal relationship between the accident and the 'use and operation' of the truck." *Kienstra*, 316 Ill. App. at 241, 44 N.E.2d at 945.

Similarly, in the case at bar, Duffy had left his vehicle and was en route to the gas station on foot. Surely the majority cannot believe that any accident caused by an uninsured motorist walking to a gas station is covered under the "ownership, maintenance or use" of an

uninsured motor vehicle clause. Under the majority's view, if Duffy had realized in his own driveway that his uninsured car was out of gas and decided to walk across town to a gas station, an accident caused by a car swerving to avoid Duffy miles from his home would be covered, for no other reason than that Duffy's ultimate destination was a gas station.

The reason that the majority view would lead to coverage in such ridiculous situations is that the majority analyzes this case backwards. The majority begins with the uninsured motor vehicle and tries to find any possible way to connect it with the accident. Using such an analysis would lead to some tangential connection in almost every case and would lead to coverage in various bizarre scenarios that are literally too numerous to imagine. Instead, I submit that the correct way of analyzing the situation is to begin with the *accident* and then look to see what caused it.

For coverage to apply the *accident* must arise out of the "ownership, maintenance or use" of an uninsured motor vehicle. What was the accident in this case? Plaintiff swerved off the road and was injured. The question that must be answered is: why did plaintiff swerve off the road? Was it because (a) Duffy was walking in the middle of the lane of traffic, or because (b) Duffy ran out of gas? The parties to this appeal agree that (a) is the correct answer, but for some reason the majority picks (b). This is the point at which the majority opinion breaks down logically. People walk to gas stations all the time without causing accidents. In order for Duffy to get gas it was not necessary for him to be walking in the middle of the lane of traffic.

Incredibly, the majority states that it does not matter that Duffy was walking in the middle of traffic rather than on the shoulder. Translated, what the majority is saying is that the very cause of the accident is irrelevant. The majority states that "[r]egardless of the manner in which he walked, Duffy's actions originated from and were incident to the operation of his vehicle." 278 Ill. App. 3d at 1055. This sentence demonstrates the problems inherent in the majority's backwards analysis. The majority is saying that it does not matter what Duffy was doing because his ultimate destination was a gas station. If we analyze the situation starting from the accident, as we must, rather than starting from the uninsured vehicle, problems like this do not arise.

Clearly, Duffy's act of walking in traffic took his activity outside the risk for which the parties contemplated there would be coverage. The parties could not have contemplated that an accident caused by a driver swerving to avoid an intoxicated pedestrian in the middle of

traffic would be covered under a clause providing coverage for liability arising out of the "ownership, maintenance or use" of an uninsured vehicle.

I believe Duffy's choice of walking in the middle of the road was an act of independent legal significance which was the cause of plaintiff's accident. Therefore, I agree with the position taken by the trial court, and I would affirm its decision.